IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **RALPH BROWN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Case Number:  2:06-cv-642-MEF** |
| | * | |
| **CHAMPION ENTERPRISES, INC.,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

MOTION TO DISMISS
OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Champion Enterprises, Inc. (hereinafter referred to as "Champion"),
without waiving the right to compel arbitration, by and through counsel of record, and pursuant
to Rules 12 and 56 of the *Federal Rules of Civil Procedure*, moves this Honorable Court to
dismiss the above-referenced matter or, alternatively, to enter a summary judgment in
Champion's favor and in support thereof states as follows:

1.     There is no genuine issue as to any material facts and Champion is entitled to a
judgment in its favor as a matter of law.

2.     In November 2004, Ralph Brown (hereinafter referred to as "Plaintiff") allegedly
purchased a manufactured home which was manufactured by Champion Home Builders Co.
(hereinafter referred to as "CHB").  The manufactured home purchased was a 2005 Model
AV808 32' x 90' manufactured home bearing serial number 011-05-808-22137A/B (hereinafter
referred to as the "Manufactured Home").  Plaintiff allegedly purchased the Manufactured Home
from Dothan Manufactured Housing (hereinafter referred to as "DMH").

1

3.     The Plaintiff failed to state a claim against Champion upon which relief can be granted.

4.     This court lacks jurisdiction.

5.     The complaint was not filed in the proper venue.

6.     Champion submits in support of this pleading the affidavit of David N. Goltz, which is attached as Exhibit "A" hereto and made a part hereof by reference.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

7.     Champion is a Michigan corporation with its corporate headquarters and principal place of business in Auburn Hills, Michigan. Champion was incorporated in 1987 as a holding company for various manufactured home manufacturers, including CHB. CHB is a separate and distinct Michigan corporation with its principal place of business in Auburn Hills, Michigan. CHB is a wholly owned subsidiary of Champion. (Goltz Affidavit, ¶ 2).

8.     As a holding company, Champion is not in the business of manufacturing, supplying or selling manufactured homes. Such activity is carried on through subsidiaries of Champion such as CHB and subsidiaries of CHB. Champion did not design, supply, sell or manufacture the manufactured home allegedly purchased by Plaintiff which is the subject of this suit. (Goltz Affidavit, ¶ 3).

9.     Champion itself does not conduct or transact business in the state of Alabama. Champion is not registered or licensed to do business in Alabama. Champion has no employees or offices in Alabama. (Goltz Affidavit, ¶ 4).

10.     Champion is a separate legal entity from CHB. Decisions relating to the business of Champion and CHB are made by separate boards of directors and officers. At the time of the manufacture of the Manufactured Home in 2004 and the alleged sale of the Manufactured Home

to Ralph Brown in 2004, CHB was in the business of manufacturing manufactured homes, selling manufactured homes to independent dealers and servicing manufactured homes. Champion has never had control over CHB's production, selling or servicing of manufactured homes. (Goltz Affidavit, ¶ 5).

11.    Champion does not control the day-to-day operations of CHB nor does it control the day-to-day business decisions made by CHB's management.  Champion and CHB are and have always been legitimate separate legal entities with distinct assets and adequate capital. CHB is an ongoing corporate entity that has not dissolved and not filed bankruptcy.  CHB maintains its own separate bank accounts, accounting records, and financial records.  Champion and CHB have always had different and separate federal tax identification numbers.  CHB observes its own corporate formalities, such as meetings and filings with state and federal regulatory agencies.  CHB is and has always been responsible for hiring and supervising its own employees and their work, and CHB's employees are and have always been compensated through CHB's own payroll.  CHB's employees make their own business and operational decisions without day-to-day oversight or control by Champion personnel.  (Goltz Affidavit, ¶¶ 6-8).

12.    CHB's operations are separate and distinct from the operations of Champion.  The business of Champion is not limited to business given to it by CHB and the business of CHB is not limited to that given to it by Champion.  No court, adjudicative forum or administrative body has ever found a unity of interest between Champion and any of its subsidiaries sufficient to pierce the corporate veil. (Goltz Affidavit, ¶¶ 9-11).

**ARGUMENT**

**I**    **Motion to Dismiss and Summary Judgment Standards.**

In accordance with Rule 12(b) of the *Federal Rules of Civil Procedure*, "[i]f on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." As matters outside the pleading are being presented, it is respectfully requested that this pleading be treated as one for summary judgment.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). Rule 56 of the *Federal Rules of Civil Procedure* sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the Court must determine (1) that there is no genuine issue of material fact; and (2) that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). The plain language of Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed 2d 774 (1989), *quoting, Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23,

106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986); *See also Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir. 1987) ("The Supreme Court has interpreted [the Rule 56 standard] to mandate summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial'.")

If a party seeking summary judgment meets the initial burden of demonstrating that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991). A nonmoving party, opposing a summary judgment motion which is supported by depositions or affidavits "cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull,* 932 F.2d at 1577, *citing Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull,* 932 F.2d at 1577, citing *First National Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

## II    Alter Ego and Jurisdiction

### A.    Failure to state a claim.

A federal court, while sitting in diversity, is bound to apply the substantive law of the state in which it sits. *See Erie, R.R. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff brought a civil action alleging negligence, wantonness, unjust enrichment, fraudulent concealment, breach of express and implied warranties and claims pursuant to the Alabama Extended Manufacturer's Liability Doctrine (hereinafter referred to as "AEMLD"). (Complaint, Counts One through Ten).

It is alleged in the Complaint that Champion was engaged in the business of manufacturing, designing, building and/or assembling, etc. the subject manufactured home and did so negligently or wantonly so as to cause damages. (Complaint, ¶¶ 12, 16, 23, 45, 50, 63).

In order to prove a breach of warranty, or negligent or wanton manufacturing, design, building or constructing, it must first be shown that Champion and CHB built and warranted the subject manufactured home.  With regard to the AEMLD claims, as was explained in *American States Ins. Co. v. Lanier Business Products,* 707 F.Supp. 494, 495-96 (M.D.Ala.1989), the Alabama Supreme Court first announced the adoption of the AEMLD in *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976).  Under this doctrine, "a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, is negligent as a matter of law." *American States,* 707 F.Supp. at 495; *see also Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1987).  To establish liability under the AEMLD, a plaintiff must prove: "(1) he suffered injury of damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) Showing these elements, the plaintiff has proved a prima facie case although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller. *Casrell,* 335 So.2d at 132-33; *Atkins,* 335 So.2d at 141.

It is undisputed that Champion was not the entity that: (1) supplied, sold or manufactured the manufactured home allegedly purchased by Plaintiff and the subject of this suit; and (2) that

Champion was not in the business of manufacturing, supplying or selling manufactured homes. (Goltz Affidavit, ¶ 3). Therefore, Champion cannot be liable for the alleged breach of warranty, negligent or wanton manufacturing, design, building or constructing, claims under the AEMLD or for any claims made in the Complaint. Champion simply had no involvement with this home and all claims against Champion should be dismissed.

Notwithstanding the above, it appears Champion was made a defendant to this action based on nothing more than the allegation that "Champion is the parent corporation and/or alter ego of Defendant Champion Home Builders, Co.". (Compliant, ¶ 16). Plaintiff has failed to state a claim upon which relief may be granted. *See Baker v. Hospital Corporation of America,* 432 So.2d 1281 (Ala.1983) (A parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation). CHB is not now and has never been the mere instrumentality of Champion.

A parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. *Baker v. Hospital Corporation of America,* 432 So.2d 1281 (Ala.1983). Where one corporation controls and dominates another corporation to the extent that the second corporation becomes the mere instrumentality of the first, the dominant corporation becomes liable for those debts or torts of the subservient corporation attributable to an abuse of that control. *Kwick Set Components, Inc. v. Davidson Industries, Inc.,* 411 So.2d 134 (Ala.1982).

"In considering the indicia of control, courts have quoted at length §§ 5 and 6 of Powell

on *Parent and Subsidiary Corporations:*

> So far as the question of control alone is concerned, the parent corporation will be responsible for the obligations of its subsidiary when its control has been exercised to such a degree that the subsidiary has become its mere instrumentality.
>
> The Instrumentality Rule is recognized in all jurisdictions in this country and our problem therefore is to determine the circumstances which render the subsidiary an "instrumentality" within the meaning of the decisions. This is primarily a question of fact and of degree.
>
> The circumstances rendering the subsidiary an instrumentality. It is manifestly impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important and which, if present in the proper combination, are controlling. These are as follows:
>
> (a) The parent corporation owns all or most of the capital stock of the subsidiary.
> (b) The parent and subsidiary corporations have common directors or officers.
> (c) The parent corporation finances the subsidiary.
> (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
> (e) The subsidiary has grossly inadequate capital.
> (f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.
> (g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
> (h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.
> (i) The parent corporation uses the property of the subsidiary as its own.
> (j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.
> (k) The formal legal requirements of the subsidiary are not observed.
> *Duff v. Southern Railway Co.,* 496 So.2d 760 (Ala.1986), citing *Taylor v. Standard Gas & Electric Co.,* 96 F.2d 693, 704-05 (10th Cir.1938); see also *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173 (5th Cir.1981); *Garrett v. Southern Ry.,* 173 F.Supp. 915 (E.D.Tenn.1959).

No one of the above factors is dispositive; nor does the list exhaust the relevant factors.

*Baker,* supra. While the dominant party may be an individual over a corporation or, as is alleged

in this case, a corporation over another corporation, the Supreme Court of Alabama has set forth

the essential elements for imposition of liability on the dominant party. The essential elements

are as follows:

> (1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;

> 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;

> 3) The misuse of this control must proximately cause the harm or unjust loss complained of.
> *Messick v. Mooring*, 514 So.2d 892, 894-895 (Ala.1987), citing *Lowendahl v. Baltimore & O. Ry.*, 247 A.D. 144, 287 N.Y.S. 62 (1936).

"Mere domination or control of a corporation by its stockholder cannot be enough to allow a

piercing of the corporate veil. There must be the added elements of misuse of control and harm

or loss resulting from it." *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1335 (Ala.1991), citing

*Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398 (Ala.1989); *Messick*, supra.

Few if any of the factors cited above exist in this case. Champion does not control the

day-to-day operations of CHB. (Goltz Affidavit, ¶ 6). CHB does not control the day-to-day

operations of Champion. (Goltz Affidavit, ¶ 6). Champion and CHB are and have always been

legitimate separate legal entities with distinct assets and adequate capital. (Goltz Affidavit, ¶ 6).

CHB is an ongoing corporate entity that has not dissolved and not filed bankruptcy. (Goltz

Affidavit, ¶ 6). CHB maintains its own separate bank accounts, accounting records, and

financial records. (Goltz Affidavit, ¶ 6). Champion and CHB have always had different and

separate federal tax identification numbers. (Goltz Affidavit, ¶ 6). CHB observes its own

corporate formalities, such as meetings and filings with state and federal regulatory agencies.

(Goltz Affidavit, ¶ 7). CHB is and has always been responsible for hiring and supervising its

own employees and their work, and CHB's employees are and have always been compensated through CHB's own payroll.  (Goltz Affidavit, ¶ 8).  CHB's employees make their own business and operational decisions without day-to-day oversight or control by Champion personnel. (Goltz Affidavit, ¶ 8).

CHB's operations are separate and distinct from the operations of Champion.  (Goltz Affidavit, ¶ 9).  Champion does not control the day-to-day business decisions made by CHB's management and CHB does not control the day-to-day business decisions made by Champion's management.  (Goltz Affidavit, ¶ 6).  The business of Champion is not limited to business given to it by CHB and the business of CHB is not limited to that given to it by Champion.  (Goltz Affidavit, ¶ 10).  No court, adjudicative forum or administrative body has ever found a unity of interest between Champion and any of its subsidiaries sufficient to pierce the corporate veil. (Goltz Affidavit, ¶ 11).

In *Brown v. Standard Casket Manufacturing Co.*, the plaintiff sought to have the legal distinction that Brown Service Funeral Home and Standard Casket Manufacturing Company were separate distinct entities disregarded.  *Brown v. Standard Casket Manufacturing Co.*, 175 So. 358, 361 (Ala.1937).  The same individual, Edmundson, owned the controlling stock in both companies, was president of Brown Funeral Home and was a director in Standard Casket Manufacturing Company.  *Brown v. Standard Casket Manufacturing Co.*, 175 So. at 361-362. Additionally, the individual who was involved in the subject accident, Arnold, was employed by both companies and doing work for both companies at the time of the accident.  *Brown v. Standard Casket Manufacturing Co.*, 175 So. at 362.  The Court "fail[ed] to see just how the fact that Mr. Edmundson owned the controlling stock in the Standard Casket Manufacturing Company, and in the Brown Service Funeral Home, and that Arnold was an agent working for

both companies, can make the two corporations one and the same, and thereby render the one liable for the torts of the other; or that rendering a service for the one can be made the basis of liability against the other." There is, therefore, no basis to support the allegation that Champion is an alter ego corporation of CHB and as such, Champion is due to be dismissed, with prejudice. See *Cahaba Veneer v. Vickery Auto Supply,* 516 So.2d 670 (Ala.Civ.App. 1987) (finding that Cahaba Veneer could not be found liable for the debts of Cahaba-Abbeville on an alter ego theory as the two companies only had one common officer who was a minority shareholder and president of both companies).

**B.    Lack of jurisdiction.**

For a defendant to be subject to suit in a forum where it is not physically present, due process requires certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Specifically, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). A defendant can "reasonably anticipate being haled into court" in a particular state if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Personal jurisdiction may be of two types, either general or specific. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984). In order to establish general jurisdiction, a plaintiff must allege contacts

between a defendant and the forum state which are "substantial and continuous." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 415 & n.9.

Specific jurisdiction is available when a suit arises directly out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 414 n.8. However, the plaintiff must show that *the defendant* purposefully directed his activities at the resident of the forum before a court may exercise specific jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 112 (1987). Likewise, the claims for relief asserted in the Complaint must arise out of that purposefully directed activity. *See id.*

It is undisputed that Champion does not conduct or transact business in the state of Alabama; is not registered or licensed to do business in Alabama; and has no employees or offices in Alabama. (Goltz Affidavit, ¶ 4). Therefore, Champion does not have sufficient minimum contacts with the forum state and it would offend the traditional notions of fair play and substantial justice for Champion to be required to defend this action in Alabama.

**WHEREFORE PREMISES CONSIDERED**, Champion prays that it be dismissed as a party defendant or alternatively, for a summary judgment in its favor and for such other, further and different relief as may be just.

<u>**AFFIRMATIVE DEFENSES**</u>

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    One or more documents relevant in this matter may require that disputes for which a claim is made in the Complaint are to be submitted to arbitration.

3.    Responsibility for any of the damages sought in the Complaint is hereby denied.

4.     The time within which the claims alleged in the Complaint could have brought has expired and therefore, the claims made in the Complaint for punitive damages or other damages are barred by the Statute of Limitations.

5.     The doctrine of laches is hereby pleaded.

6.     This action is filed in the improper venue and/or there is a more convenient forum for the parties to this action.

7.     The Court lacks jurisdiction over some or all of the defendants.

8.     The plaintiff, whether one or more, or some other third party contributed to the cause of the alleged damages and therefore there is a bar from relief.

9.     Proximate causation as it relates to any damages in the Complaint is hereby denied.

10.    Causal connection between any alleged actions and any alleged injuries or damages complained of in the Complaint are hereby denied.

11.    It is hereby plead that the injuries and damages alleged in the Complaint were proximately caused by the negligence of one or more of the plaintiffs or some other party.

12.    It is hereby denied that there was any alleged reliance upon any alleged representation and that any such reliance was reasonable.

13.    It is hereby asserted that there has not been a breach of any duty owed to any complaining party, nor any responsibility owed for any damages allegedly incurred.

14.    Conditions precedent relative to the right to maintain this action has not been met.

15.    It is hereby denied that the plaintiff (whether one or more) is entitled to recover punitive damages based upon the averments made in the Complaint.

16.    The claims are barred due to failure to mitigate damages.

17.    The statute of frauds is hereby pleaded.

18.    An invitation for a court or jury to impose liability for punitive damages, without guidelines or standards for determination of the amount or proper circumstances for such an award, would deny due process of law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Alabama.

19.    The claims for punitive damages are barred by the Fourteenth Amendment to the United States Constitution and by the Constitution of the State of Alabama.

20.    The imposition of punitive damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth, Sixth, Eighth, and Fourteenth Amendments, separately, to the United States Constitution on each of the following grounds:

A.    The procedures pursuant to which punitive damages are awarded permit the award of punitive damages upon satisfaction of a standard of proof less than the applicable standard of proof required for the imposition of criminal sanctions.

B.    The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of award.

C.    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the award of punitive damages.

D.    The procedures pursuant to which punitive damages are awarded are unconstitutionally vague.

E.    The procedures pursuant to which punitive damages are awarded fail to provide a means for awarding separate judgments against alleged joint tortfeasors.

F.    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of punitive damages.

14

G.  The procedures pursuant to which punitive damages are awarded fail to provide a clear appellate standard of review of an award of punitive damages.

H.  The procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined.

I.  An award of punitive damages would constitute an arbitrary and capricious taking of property without due process of law.

21.  Imposition of punitive damages in this case would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

22.  All defenses, criteria, limitations, and standards mandated by the Supreme Court of the United States in the case styled *BMW of North America, Inc., v. Gore*, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1997) are hereby adopted by reference.

23.  Any statutory cap on damages, enacted at present or subsequent to the filing of this Answer, is hereby asserted.

24.  Liability as a manufacturer for damages under the Alabama Extended Manufacturer's Liability Act is hereby denied.

25.  There is a bar against recovery for damages as the actor assumed the risk of the activity engaged, which allegedly caused an injury.

26.  Any alleged damage for which a complaint has been made was caused by an independent intervening cause after the manufacture and/or sale.

27.  Any and all claims for punitive damages in this action are limited in amount by the application of § 6-11-21, *Alabama Code (1975)*, which provides that an award of punitive damages shall not exceed $250,000.00.

28.    The holding of *Henderson v. Alabama Power Co.*, 627 So.2d 878 (Ala. 1993) is due to be overruled for each and every reason set forth in the special concurrences in *Goodyear Tire & Rubber Co. v. Vinson*, 749 So.2d 393 (Ala. 1999), and supporting authorities therein, which are adopted by reference as if fully set out herein.

29.    The doctrine of revival dictates that upon the overruling of *Henderson v. Alabama Power Co.*, 627 So.2d 878 (Ala. 1993), the $250,000.00 cap provided by § 6-11-21, *Alabama Code (1975)*, is applicable to this case which was filed after § 6-11-21 was enacted.

30.    It is hereby asserted that the claim for a jury determination of punitive damages is due to be stricken, as such determination is not a finding of "fact" which falls within the province of the jury. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001).

31.    Potential liability for mental anguish damages should be restricted to conduct which is bound to result in shame, humiliation, and mental anguish, but not mere disappointment, anger, worry, aggravation, resentment, or embarrassment, and in the absence of emotional distress so severe that no reasonable person could be expected to endure it and substantial evidence a defendant was aware of circumstances that would make alleged intentional or negligent conduct result in shame, humiliation, and mental anguish, claims for mental anguish should not be allowed to be submitted to the jury. Alabama follows the "zone of danger" test, which limits recovery of mental anguish damages to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. *See Wal-Mart Stores, Inc. v. Bowers*, 752 So.2d 1201 (Ala. 1999.); *AALAR, Ltd., Inc. v. Francis*, 716 So.2d 1141, 1147 (Ala. 1998); a*ccord, White Consol. Indus., Inc. v. Wilkerson*, 737 So.2d 447, 449 (Ala. 1999).

32.    Mental anguish damages are not available in this case as the terms the warranty expressly preclude responsibility for incidental or consequential damages or expenses.

33.    The invitation for a trier of fact to impose liability for mental anguish damages, without guidelines or standards for determination of the amount or proper circumstances for such an award, would deny due process of law in violation of the Fourteenth Amendment to the United States Constitution, violate of the Constitution of the State of Alabama, the Rule of Certainty, the Dormant Commerce Clause, the Separation of Powers, and violates the rule of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Rep. 145 (1854)[1] in that, among other things, there is an appropriate remedy in tort.

34.    The claims relating to mental anguish damages are barred by the Fourteenth Amendment to the United States Constitution and by the Constitution of the State of Alabama.

35.    The imposition of mental anguish damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth, Sixth, Eighth, and Fourteenth Amendments, separately, to the United States Constitution on each of the following grounds:

---

[1]        The rule of *Hadley v. Baxendale* was stated by Alderson, B., as follows: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated . But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. 156 Eng.Rep. at 151.

A.    The procedures pursuant to which mental anguish damages are awarded permit the award of mental anguish damages upon satisfaction of a standard of proof less than the applicable standard of proof required for the imposition of criminal sanctions.

B.    The procedures pursuant to which mental anguish damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrong doing.

C.    The procedures pursuant to which mental anguish damages are awarded fail to provide a reasonable limit on the amount of award.

D.    The procedures pursuant to which mental anguish damages are awarded fail to provide specific standards for the award of mental anguish damages.

E.    The procedures pursuant to which mental anguish damages are awarded are unconstitutionally vague.

F.    The procedures pursuant to which mental anguish damages are awarded fail to provide a means for awarding separate judgments against alleged joint tortfeasors.

G.    The procedures pursuant to which mental anguish damages are awarded fail to provide specific standards for the amount of mental anguish damages.

H.    The procedures pursuant to which mental anguish damages are awarded fail to provide a clear appellate standard of review of an award of mental anguish damages.

I.    The procedures pursuant to which mental anguish damages are awarded may permit the admission of evidence relative to mental anguish damages in the same proceedings during which liability and compensatory damages are determined.

J.    An award of mental anguish damages would constitute an arbitrary and capricious taking of property without due process of law.

36.    Imposition of mental anguish damages would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

18

37.    A manufactured home is not a "consumer product" as defined in the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act") as a manufactured home is a dwelling.  Under 16 C.F.R. § 700.1(e), it is stated that:

> numerous products which go into the construction of a consumer dwelling are all consumer products when sold "over the counter," as by hardware and building supply retailers . . .  However, where such products are at the time of sale integrated into the structure of a *dwelling* they are not consumer products as they cannot be practically distinguished from realty. (Emphasis added).

38.    Even if the Magnuson-Moss Act is applicable, there has been a failure to comply with the conditions precedent to recovery under the Magnuson-Moss Act.

39.    Mental anguish damages are not recoverable under the Magnuson-Moss Warranty Act (if applicable).

40.    Any warranty obligations owed are controlled and strictly limited by the expressed terms of any warranty, including all limitations and exclusions set out in any applicable warranty.

41.    Your pleader has not been afforded a reasonable amount of time to cure alleged defects in the manufactured home and thus, any breach of warranty claim or any Magnuson-Moss Act claim (if applicable) is barred.

42.    Upon information and belief, your pleader may have been refused the right to cure alleged defects in the manufactured home and therefore, there is no right to bring a claim for any breach of warranty.

43.    There is no right of recovery as there was no failure or refusal to perform any warranty obligations.

44.    Any express warranty has not failed of its essential purpose.

45.    Your pleader is not the seller of the manufactured home and there is no privity of contract between the parties.

46.    Based on averments in the Complaint, it appears that the sales transaction with the ultimate purchaser of the subject manufactured home may not be complete.  Under 24 C.F.R. § 3282.252(b), completion of a sales transaction is defined as follows:

> A sales transaction with a purchaser is considered completed when all the goods and services that the dealer agreed to provide at the time the contract was entered into have been provided.  Completion of a retail sale will be at the time the dealer completes set-up of the manufactured home if the dealer has agreed to provide the set-up or at the time the dealer delivers the home to a transporter, if the dealer has not agreed to transport or set up the manufactured home, or to the site if the dealer has not agreed to provide set-up.

47.    If the subject manufactured home was not completely installed or improperly installed or transported, then any warranty issued in connection with the subject manufactured home does not provide warranty service on a home which is not completely installed or has suffered transportation damages.

48.    All negligent design or manufacture claims are preempted as the National Manufactured Housing Construction and Safety Standards Act, 42 U.S.C. § 5401, *et seq.* (the "NMHCSSA") creates no private right of action in favor of purchasers of allegedly defective homes against manufacturers or sellers of such and there exists an adequate remedy for purchasers, *i.e.*, claims for breach of warranty.  *See Hueur v. Forest Hill State Bank,* 728 F. Supp. 1197, 1198 (D.Md. 1989).  In *Hueur v. Forest Hill State Bank,* the court determined as follows:

> The statute in question does not expressly create any private cause of action in favor of purchasers.   The Court is not aware of any case in which a federal or state court has held that it implies a private right of action.   The Court has analyzed the matter, as stated by the Fourth Circuit's reasoned decision in *Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988), and it finds that, applying the tests stated therein, the NMHCSSA does not imply any private right of action.

Study of the legislative history of the statute, reprinted at 1974 *U.S.Code Cong. & Admin.News* 4273, *et seq.,* shows no Congressional intention at all to create a private cause of action. *See id.,* especially at 4340-41. Rather, the purpose of the legislation was to set up a federal set of manufacturing standards, to be enforced "to the maximum extent" by the States. Especially significant is the fact that consumer protection was to be achieved by warranty and recall notice provisions. There was no mention of providing a federal forum to enforce these measures. Of course, it was well known to Congress that actions for breach of warranty, based on state law, are traditional enforcement remedies for dissatisfied consumers. Because this Court cannot find any Congressional intent to imply a private remedy for purchasers of allegedly defective homes, because the basic causes of action traditionally provided by state law are adequate to remedy any claim the purchaser might have (as is evidenced by the fact that such claims have been set forth in this case in other counts of the complaint), and because the intent of the legislative scheme was primarily to establish uniformity in construction standards, this Court is of the opinion that Congress did not intend to create a private cause of action for violation of the NMHCSSA of 1974.

*Hueur v. Forest Hill State Bank,* 728 F. Supp. at 1198.

49.     Any recovery is subject to indemnity and contribution by named and unnamed parties.

50.     There has been spoliation of evidence.

51.     All or some of the claims made in the Complaint are preempted by federal law.

52.     All claims are or may be subject to further defenses of statute of limitations, insufficiency of process, insufficiency of service of process, lack of jurisdiction over the subject matter, lack of jurisdiction over the person, failure to join a necessary party, improper venue, set-off; waiver, laches, estoppel, mistake, and absence of duty.

53.     If the plaintiff (whether one or more) filed for bankruptcy protection during any relevant time period, judicial estoppel is hereby plead.

54.     If the plaintiff (whether one or more) filed for bankruptcy protection during any relevant time period, equitable estoppel is hereby plead.

55.    If the plaintiff (whether one or more) filed for bankruptcy protection during any relevant time period, waiver is hereby plead.

56.    Any alleged negligent or wanton design, marketing or distributing of any product that proximately caused injury is hereby denied.

57.    It is specifically denied that there has been any breach of the Alabama Extended Manufacturer's Liability Doctrine in connection with any sale of a product as alleged in the Complaint.

58.    It is hereby denied that there has been any negligent or wanton failure to warn of any dangers associated with the use of the product made the subject of this lawsuit or any duty to so warn.

59.    It is hereby denied that the product made the subject of this lawsuit was defective, or unreasonably dangerous, when being used for its intended purposes.

60.    Any alleged damages claimed as a result of the use of the product made the subject of this lawsuit was due to the misuse of the product described in the Complaint, and said misuse was the proximate cause of the injuries.

61.    It is hereby denied that the product described in the Complaint was being used for its intended purpose, or in a proper manner, at the time of alleged injuries.

62.    Any alleged danger presented by the subject manufactured home was open and obvious to any user.

63.    The sophisticated user defense is applicable in this matter.

64.    Any negligence and wantonness claims are subsumed by the Alabama Extended Manufacturers Liability Doctrine.

65.     Each and every material allegation contained in the Complaint that has not been heretofore admitted, controverted, or denied is hereby specifically denied, and strict proof thereof is demanded in this action.

66.     All affirmative defenses as itemized in Rule 8 of the applicable Rules of Civil Procedure or that may otherwise be applicable are hereby incorporated as if fully set forth herein. In the event of further investigation or discovery reveals the applicability of any such defenses or other defenses, the right to plead such affirmative defenses as may be appropriate in this case is hereby reserved. Such defenses are herein incorporated by reference for the specific purpose of not waiving any such defense.

Respectfully submitted,

RITCHEY & RITCHEY, P.A.

_____
Gregory S. Ritchey, Esquire {ASB-8193-H68G}
Richard S. Walker, Esquire {ASB-8719-L70R}
Counsel for Champion Enterprises, Inc.

OF COUNSEL:
**RITCHEY & RITCHEY, P.A.**
P.O. Drawer 590069
Birmingham, AL 35259-0069
Phone:          205.271.3100
Facsimile       205.271.3111

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been served upon the following:

Jere L. Beasley, Esquire
W. Daniel Miles, III, Esquire
C. Gibson Vance, Esquire
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103

by placing a copy of same in the United States Mail, postage prepaid, on this the 26 day of
_____, 200 6.

_____
OF COUNSEL

**EXHIBIT A**

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **RALPH BROWN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Case Number:  2:06-CV-642-MEF** |
| | * | |
| **CHAMPION ENTERPRISES, INC.,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

| | | |
|---|---|---|
| **STATE OF MICHIGAN** | * | |
| | * | **A F F I D A V I T** |
| **OAKLAND COUNTY** | * | |

Before me the undersigned authority, in and for said state and county, personally appeared, David N. Goltz, who being by me first duly sworn, under oath, deposes and says:

1.      My name is David N. Goltz and I am over the age of 19 years.  I am employed as Associate General Counsel of Champion Enterprises, Inc. (hereinafter referred to as "Champion") and I have personal knowledge of the facts set forth in this Affidavit.  I make this Affidavit and appear specifically for the purpose of supporting the motion filed in the above styled action and without waiving jurisdiction.  I do hereby certify that as Associate General Counsel of Champion, I have access to its files and records relating to corporate structure, business operations and wholly owned subsidiaries.  I have carefully examined said files and the documents contained therein.  Said files and the documents contained therein are kept in the ordinary course of Champion's business, prepared by a person with knowledge of or made from information transmitted by a person with knowledge of the acts and events appearing in them, and made at or near the time of the acts and events appearing in them.

1

2.      Champion is a Michigan corporation with its corporate headquarters and principal place of business in Auburn Hills, Michigan.  Champion was incorporated in 1987 as a holding company for various manufactured home manufacturers, including Champion Home Builders Co. (hereinafter referred to as "CHB").  CHB is a separate and distinct Michigan corporation with its principal place of business in Auburn Hills, Michigan.  CHB is a wholly owned subsidiary of Champion.

3.      As a holding company, Champion is not in the business of manufacturing, supplying or selling manufactured homes.  Such activity is carried on through subsidiaries of Champion such as CHB and subsidiaries of CHB.  Champion did not design, supply, sell or manufacture the manufactured home allegedly purchased by Ralph Brown which is the subject of this suit.

4.      Champion itself does not conduct or transact business in the state of Alabama.  Champion is not registered or licensed to do business in Alabama.  Champion has no employees or offices in Alabama.  Champion has never maintained an office in Montgomery, Alabama.

5.      Champion is a separate legal entity from CHB.  Decisions relating to the business of Champion and CHB are made by separate boards of directors and officers.  At the time of the manufacture of the Manufactured Home in 2004 and the alleged sale of the Manufactured Home to Ralph Brown in 2004, CHB was in the business of manufacturing manufactured homes, selling manufactured homes to independent dealers and servicing manufactured homes.  Champion has never had control over CHB's production, selling or servicing of manufactured homes.

6.      Champion does not control the day-to-day operations of CHB nor does it control the day-to-day business decisions made by CHB's management.  CHB does not control the day-

to-day operations of Champion nor does it control the day-to-day business decisions made by Champion's management.  Champion and CHB are and have always been legitimate separate legal entities with distinct assets and adequate capital.  CHB is an ongoing corporate entity that has not dissolved and not filed bankruptcy.  CHB maintains its own separate bank accounts, accounting records, and financial records.  Champion and CHB have always had different and separate federal tax identification numbers.

7.    CHB observes its own corporate formalities, such as meetings and filings with state and federal regulatory agencies.

8.    CHB is and has always been responsible for hiring and supervising its own employees and their work, and CHB's employees are and have always been compensated through CHB's own payroll.  CHB's employees make their own business and operational decisions without day-to-day oversight or control by Champion personnel.

9.    CHB's operations are separate and distinct from the operations of Champion.

10.    The business of Champion is not limited to business given to it by CHB and the business of CHB is not limited to that given to it by Champion.

11.    Based upon my information and belief, no court, adjudicative forum or administrative body has ever found a unity of interest between Champion and any of its subsidiaries sufficient to pierce the corporate veil.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 24TH day of _____JULY_____, 2006 in Auburn Hills, Michigan.

CHAMPION ENTERPRISES, INC.

By:_____

Its Associate General Counsel

Sworn and subscribed before me this 24th day of July,

200 6 .

Notary Public

My Commission Expires: 1-19-11

Debbie Doetsch
Notary Public of Michigan
Macomb County
Acting in Oakland County
Expires 01/19/2011

4