IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RALPH BROWN,

 Plaintiff,

v.

             Case Number: 2:06-CV642-MEF

CHAMPION ENTERPRISES, INC., et al.

 Defendants.

**REPLY TO PLAINTIFF'S RESPONSE TO CHAMPION
ENTERPRISES, INC.'S MOTION TO DISMISS AND MOTION TO SEAL**

**COMES NOW**, Champion Enterprises, Inc. (hereinafter referred to as "CEI"), by and through counsel of record, and in reply to Plaintiff's Response to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (hereinafter referred to as "Plaintiff's Response"), states as follows:

1. CEI incorporates herein its Motion to Strike being filed simultaneously herewith.

2. CEI also incorporates herein pertinent portions of the deposition of CEI's corporate representative attached to Plaintiff's Response as Exhibit A (hereinafter referred to as "Ex. A") and Bates stamped exhibits Brown R00665-Brown R00670.[1] References to the pertinent portions of said deposition are set forth below.

3. Pursuant to the Protective Order (Doc. No. 15), CEI respectfully requests this Honorable Court to order the exhibits Bates stamped Brown R00665-Brown R00670 sealed.

---

[1] As was pointed out in Footnote 1 of Plaintiff's Response, documents that were produced in this matter by CEI were business records kept in the normal course of business. (Ex. A, p. 11, 3-25; p. 12, 1-11).

1

## UNDISPUTED FACTS

CEI was established in 1953, is now a stock holding company and owns one-hundred percent of the stock of Champion Home Builders Co. (hereinafter referred to as "CHB"), which is presently its only asset. (Ex. A, p. 16, 9-11; p. 41, 6-9; p. 43, 12-24). No manufacturing facilities operate under the name of CEI. (Ex. A, p. 48, 4-15). Until 2003 or 2004, CEI had some employees and also, directly owned other subsidiaries until around 2001 or 2002. (Ex. A, p. 40, 6-25; p. 41, 1-5; p. 50, 21-25; p. 51, 1-2).

Pursuant to Management Agreements by and between CEI, CHB and, a non-party, Champion Enterprises Management Co. (hereinafter referred to as "CEM"), services are provided by or to CEI, CHB, and CEM in accordance with such agreements. (Ex. A, p. 38, 4-14; Brown R00665-Brown R00670). Such services include, but are not limited to, providing office space, office administration services, accounting and tax services, management information services, establishment and maintenance of computer networks, legal services and such other management or administrative services that are reasonably requested which can be provided. (See Brown R00665-Brown R00670).

Although CEI is the registered domain owner of the website "championhomes.net" (or championhomes.com), it does not conduct any activity on the website; the website itself, all inputting, design and activity, are handled and controlled by Paul Paruji, an employee of a non-party, CEM. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4). The website is informational in nature and allows someone to view listings of homes produced by CHB or such other subsidiary of CHB in a particular area sold by independent retailers. (Ex. A, p. 80, 17-25; p. 81, 1-16). The independent retailers have entered into an agreement with CHB or one of CHB's subsidiaries, not CEI. (Ex. A, p. 82, 2-21).

2

## ARGUMENT

**Personal Jurisdiction.**

It is the plaintiff's burden to establish personal jurisdiction over a nonresident defendant. "Where a district court in its discretion decides a personal jurisdiction issue without an evidentiary hearing, it is the plaintiff's burden to establish a prima facie case of personal jurisdiction over a nonresident defendant." *Homebingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1240-1241 (S.D.Ala. 2006); citing *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed.Cir.2003); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir.2002). In *Chayevsky*, the two types of personal jurisdiction, general and specific, were discussed as follows:

> There are two types of personal jurisdiction: general and specific. General personal jurisdiction arises "when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed.Cir.2005) (citations omitted); *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1200 (Fed.Cir.2003) . . . Specific jurisdiction is proper, even if a defendant's contacts with the forum state are "isolated and sporadic," so long as such activities arise out of or relate to the cause of action. See *Trintec*, 395 F.3d at 1279; *Silent Drive*, 326 F.3d at 1200.
>
> When a defendant challenges specific personal jurisdiction in a federal question case, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with the forum state's long-arm provision, as well as the strictures of the due-process clause of the Fifth Amendment to the United States Constitution. See *Trintec*, 395 F.3d at 1279; *Silent Drive*, 326 F.3d at 1200-01; *Deprenyl [Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1349-50 (Fed.Cir. 2002)]. In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause. See *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir.2000); *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F.Supp.2d 1293, 1296 (S.D.Ala.2003). Where, as here, the reach of the state long-arm statute is coextensive with the limits of due process, "these two inquiries coalesce into one." *Trintec*, 395 F.3d at 1279...

> Due process authorizes the exercise of personal jurisdiction when both (1) the nonresident defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. See *Deprenyl*, 297 F.3d at 1350-51.

*Homebingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d at 1241-1242.

The Eleventh Circuit has recognized that the requirements for satisfying general jurisdiction are more stringent than those of specific jurisdiction as continuous and systematic contacts with the forum state must be shown. *Consolidated Dev. Corp. v. Sherrit, Inc.*, 216 F.3d 1289, 1292 (11th Cir. 2000). There has been no showing of "continuous and systematic contacts" by CEI in Alabama.

Specific jurisdiction has further been analyzed as follows:

> "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consolidated Dev. Corp.*[ *v. Sherrit, Inc.*, 216 F.3d 1289, 1291 (11th Cir. 2000)]. It must be shown that Defendants purposefully availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* The "purposeful availment" standard prevents personal jurisdiction based on "random" or "fortuitous" contacts. *Burger King* [*Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)]. Rather, defendants must have "deliberately . . . engaged in significant activities within a State." *Id.* at 475-76.

*Peacock v. Merrill*, 2005 WL 2233466 (S.D.Ala. Sept. 14 2005).

There is absolutely no evidence that any CEI representative was involved in the manufacture, design, sale, or service of the manufactured home.[2] Plaintiff essentially makes two

---

2  The testimony reflected that each plant handled its own affairs. In accordance with SEC regulations, Sarbanes-Oxley requirements and other federal laws, CEI formulated guidelines and other documents with regard to its operation. (Ex. A, p. 42, 16-25; p. 45, 21-25; p. 46, 1-25; p. 55, 2-7; p. 72, 2-25; p. 73, 1-12). Such action is not inconsistent with what companies must do to comply with federal laws. *See Ex parte Baker*, 432 So.2d 1281 (Ala. 1983) (case involving corporations with management consulting agreements, directors of one corporation that were officers of another, employees that provided services to all subsidiaries, centralized payroll, and financial reporting, which was necessary to comply with regulations of the Securities and Exchange Commission and the New York Stock Exchange; court finding such

(2) claims with regard to personal jurisdiction; (1) since CEI is the registered domain owner of championhomes.net, the personal jurisdictional requirements have been met; and (2) since CEI owns 100% of CHB and CHB has a plant in Alabama, the personal jurisdictional requirements have been met. However, no case law was submitted to support the claims. Indeed, case law suggests otherwise.

In June of this year, Judge Albritton had an opportunity to review a personal jurisdiction question involving a website. In *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d 1250 (M.D.Ala. 2006), a transaction to purchase a vehicle was commenced and completed in Union City, Georgia; two days later, an individual in the vehicle was killed in an accident in Lowndes County, Alabama. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1252. Suit was filed in Lowndes County, Alabama, which was removed to federal court and a motion to dismiss was filed by the dealership alleging the court lacked personal jurisdiction, that the dealership did not conduct business in Alabama, did not have agents or offices in Alabama, that no purchasers of vehicles had taken delivery in Alabama and the dealership did not advertise or solicit business in Alabama. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1251-1252. In response, the plaintiff, through counsel, asserted personal jurisdiction existed based on following electronic evidence:

> The Plaintiff argues that it is clear that *in personam* jurisdiction exists over Don Jackson in Alabama in this case, based in part on evidence of electronic mail

---

activity was not sufficient to allow the piercing of the corporate veil). While the guidelines and job descriptions specify on paper supervisory roles as well as the chain of command, and conceivably, a person higher in command can have authority to give directives, etc., that is not how things operate day to day. (Ex. A, p. 61, 14-25; p. 62, 1-25; p. 63, 1-7; p. 67, 12-25; p. 69, 1-25; p.70, 1-4). The day to day manufacturing decisions are not made by the CEO of CEI, but rather, by plant managers of the various plants. (Ex. A, p. 67, 12-18). Each of the plants has its own Design Approval Primary Inspection Agency ("DAPIA") that approves drawings and plans from each plant's separate engineering department; further, each individual entity is responsible for its own actions. (Ex. A, p. 63, 14-25; p. 64, 1-24; p. 73, 20-25; p. 74, 1-16).

5

correspondence between Plaintiff's counsel and Don Jackson, which Plaintiff's counsel initiated pursuant to Don Jackson's website. Several weeks after the fatal accident, the Plaintiff's attorney corresponded by e-mail with Don Jackson and inquired about purchasing a specific vehicle. The purported email from Don Jackson responds that the dealership regularly ships cars out to other states. The Plaintiff asserts that the negotiations to purchase a car demonstrate that *in personam* jurisdiction exists because the representative from Don Jackson said that it ships cars to many different states. The Plaintiff also argues that it can be inferred from the Defendants' evidence that Don Jackson has sold vehicles to Alabama citizens in the past.

*Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1253.

It was determined that the email and purported previous sales did not involve the transaction between the owner of the subject vehicle and the dealer, no evidence was submitted that any aspect of the transaction between the parties occurred in Alabama and the email and website evidence did not concern the transaction between the purchaser and dealer, but rather, involved plaintiff's counsel and transpired after the accident; thus, such information was insufficient to establish specific or general jurisdiction. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1253-56.

In reaching the above determination, it was noted that the Northern District of Alabama in *Butler v. Beer Across America*, 83 F.Supp.2d 1261 (N.D.Ala. 2000) adopted a model for analyzing websites as minimum contacts described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997), which essentially is as follows:

> The Zippo model is based on a sliding scale analysis. At one end, jurisdiction is created when there are knowing and repeated transmissions of computer files over the internet. See *Butler*, 83 F.Supp.2d at 1266. At the other end, personal jurisdiction is improper where the defendant's internet site is passive, and consists of little more than an electronic billboard. *Id.* In between these extremes are websites which allow for exchange of information. *Id.*

*Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d [FN1].

In this case, CEI's activity is clearly passive, as it is merely the owner of the domain; CEI does not conduct any activity whatsoever on the website as such activity is exclusively handled by CEM. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4). The website is informational in nature and allows someone to view listings of homes produced by CHB or such other subsidiary of CHB in a particular area sold by independent retailers. (Ex. A, p. 80, 17-25; p. 81, 1-16). At best, CEM (and not CEI) gives referrals to independent dealers. The independent retailers have entered into an agreement with CHB or one of CHB's subsidiaries, not CEI. (Ex. A, p. 82, 2-21; see Ex. GG to Plaintiffs' Reply). No sales are made over the internet. No evidence has been submitted that the website was utilized in any way with regard to the sale of the subject home.

There is absolutely no evidence to establish that the transaction in question took place over the internet or to show that CEI was involved. In other words, the website is not a contact with the forum state related to the cause of action. *See Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1254; citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Therefore, specific jurisdiction cannot be shown.

With regard to general jurisdiction, it was determined that while the *Zippo* analysis was helpful in some circumstances, it is not determinative of the general personal jurisdictional inquiry. *Thomas v. Mitsubishi Motor North America, Inc.*, 436 F.Supp.2d at 1255. In *Thomas*, the reasoning in *Butler* was found to be persuasive, which is more particularly set forth below:

> The court is persuaded that the reasoning of *Butler* applies in this case. At most, there is evidence in this case that some sales of automobiles to Alabama residents could have occurred in the past. This is certainly less compelling evidence than that in *Butler* where there was actual evidence of sales to Alabama citizens via the internet. Even assuming without deciding that the website in this case lies somewhere in the middle of the *Zippo* interactivity spectrum, given the lack of evidence regarding the quantity of internet contact by Alabama citizens, and in view of the Defendants' uncontroverted evidence, including but not limited to,

7

that Don Jackson has no agent in Alabama, owns no property in the state, sells no cars in Alabama, has not delivered cars to Alabama, and does not advertise in Alabama, the court concludes that the contacts identified by the Plaintiff are not sufficient to establish general personal jurisdiction over Don Jackson in Alabama.

*Thomas v. Mitsubishi Motor North America, Inc.,* 436 F.Supp.2d at 1255-1256.

In this case, it is clear that CEI did not sell the home to plaintiff over the internet, has no agents or offices in Alabama, does not operate or run the internet site, owns no property in the state, does not sell anything into Alabama, has not delivered anything into Alabama, and does not advertise in Alabama. (Ex. A, p. 84, 1-10; p. 92, 15-25; p. 93, 1-4; Ex. A to Motion to Dismiss or, in the alternative, Motion for Summary Judgment). Therefore, there is insufficient evidence to establish general personal jurisdiction.

Plaintiff also makes the argument, without any case law support, that because CEI owns 100% of CHB, it does business in Alabama because CHB has a plant in Alabama. It is expected no case law was submitted in support of the above since case law clearly shows that just because a parent owns a subsidiary that does business in a state, that fact alone is insufficient to support personal jurisdiction over the parent. *See, e.g. Consolidated Development Corp. v. Sherritt, Inc.,* 216 F.3d,1286, 1293 (11th Cir. 2000) (Generally, a foreign parent is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there); *Portera v. Winn Dixie of Montgomery, Inc.,* 996 F.Supp. 1418, 1423 (M.D.Ala. 1998) (where "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary"; *quoting Charles Alan Wright & Arthur r. Miller, Federal Practice and Procedure,* § 1069 (2d e. 1987)); *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 337, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925) (It is well established that as long as a parent and a subsidiary are separate and distinct

corporate entities, the presence of one in a forum state may not be attributed to the other). Although the plaintiff went beyond the personal jurisdiction issue during the deposition of the corporate representative of CEI and further, had the opportunity to review close to 1,000 pages of documents produced by CEI, plaintiff conceded that it could not be established that the corporate formalities were not met. (Plaintiff's Response, page 18). It is clear from the facts and evidence that the corporate formalities have been met.[3]

**WHEREFORE PREMISES CONSIDERED**, CEI prays that the exhibits Bates stamped Brown R00665-Brown R00670 be sealed, that CEI be dismissed as a party defendant and for such other, further and different relief as may be just.

Respectfully submitted,

RITCHEY & RITCHEY, P.A.

Gregory S. Ritchey, Esquire {ASB-8193-H68G}
Richard S. Walker, Esquire {ASB-8779-L70R}
Counsel for Champion Enterprises, Inc.

OF COUNSEL:
RITCHEY & RITCHEY, P.A.
P.O. Drawer 590069
Birmingham, Alabama 35259-0069
Direct Dial:   205.271.3105
Facsimile:    205.271.3111

---

3 CEI and CHB have complied with corporate formalities. (Ex. A to Motion to Dismiss or, in the alternative, Motion for Summary Judgment; Brown R00494-Brown R00503; Brown R00546-Brown R00618; Brown R00646-Brown R00661; Ex. D to Plaintiff's Response.)

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been served upon the following:

Jere L. Beasley, Esquire
W. Daniel Miles, III, Esquire
C. Gibson Vance, Esquire
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103

by placing a copy of same in the United States Mail, postage prepaid, on this the _4th_ day of ___Dec___, 200_6_.

_____
OF COUNSEL